1  Jeffrey D. Kaliel (CA Bar No. 238293)
   jkaliel@kalielpllc.com
2  KALIEL PLLC
   1875 Connecticut Ave., NW, 10th Floor
3  Washington, D.C.  20009
   (202) 350-4783
4
5  Melissa Weiner (pending *pro hac vice*)
   Christopher Moreland (pending *pro hac vice*)
6  HALUNEN LAW
   80 South 8th Street, Suite 1650
7  Minneapolis, MN 55402
   (612) 605-4098
8
9  Attorneys for Plaintiff Rosalinda Delacruz
   and the Putative Class
10
11                  **UNITED STATES DISTRICT COURT**

                  **EASTERN DISTRICT OF CALIFORNIA**
12
13  ROSALINDA DELACRUZ, on behalf of
    herself and all others similarly situated,
14
15                      Plaintiff,                **CLASS ACTION COMPLAINT**
16          v.
17
    SERVICE CORPORATION
18  INTERNATIONAL
19                      Defendant.
20
21
22
23
24
25
26
27
28

1    Plaintiff Rosalinda Delacruz, individually and on behalf of all others similarly situated (the

2    "Class" as defined below), by and through her undersigned counsel, brings this Class Action

3    Complaint against Service Corporation International ("SCI"), and respectfully states and alleges as

4    follows. Plaintiff bases the allegations set forth herein on personal knowledge as to matters related to

5    and known to Plaintiff. As to all other matters, Plaintiff bases the allegations set forth herein on

6    information and belief, through investigation of Plaintiff's counsel. Plaintiff believes that substantial

7    evidentiary support exists for the allegations set forth herein, and seeks a reasonable opportunity for

8    discovery.

9    **NATURE OF THE CASE**

10    1.    Defendant Respondent SCI is the largest death care services provider in the United

11    States, offering funeral, cremation, and burial services.  On behalf of herself and the Class members,

12    Plaintiff Delacruz alleges that during the applicable "Class Period" (defined below), Defendant SCI

13    deceptively and misleadingly marketed, and continues to deceptively and misleadingly market its

14    funeral services, using a process by which it foists expensive funeral service "packages" on bereaved

15    consumers while failing to carry out its legal obligation to adequately inform those consumers they

16    have the right to decline said "packages" and instead purchase limited, less-expensive, or "a la carte"

17    funeral services.

18    2.    By reason of Defendant's deceptive, misleading, and ultimately unlawful practices,

19    reasonable consumers, including Plaintiff and the members of the putative Class, have been

20    victimized and have paid money for funeral services they did not need, did not want, and were not

21    obligated to purchase, but did not know they had the option to decline.

22    3.    Accordingly, Plaintiff Delacruz on behalf of herself and all others similarly situated,

23    brings this putative class action to enjoin Defendant from continuing to engage in its deceptive,

24    misleading, and unlawful practices, and to recover damages for injuries caused thereby.

25    **PARTIES**

26    4.    Plaintiff Rosalinda Delacruz is a resident of Visalia, California.

27

28

5.      In July 2014, one day before her birthday, Plaintiff Delacruz lost her fiancé, Robert Allen Palmero, Jr. Together with Robert's mother, Linda Palmero, Plaintiff Delacruz went to Lisle Funeral Home, which is located in Fresno, California, and which is owned by SCI.

6.      At that time, SCI sold Plaintiff Delacruz a "package" of funeral products and services totaling $7,952.00. Although Linda Palmero signed the purchasing agreement, Plaintiff Delacruz paid for the majority of the expenses, even taking out a loan in order to do so.

7.      Plaintiff Delacruz would not have purchased the foregoing "package" had Defendant SCI not made deceptive, misleading, or false representations telling her that purchasing a "package" was her only option, and had she known she had the right to select and purchase individual funeral products and services.

8.      Defendant SCI is a multibillion dollar company headquartered in Texas and incorporated in Texas.

9.      Defendant markets and sells its funeral products and services in a manner designed to induce consumers to purchase its funeral "packages" (as opposed to the individual products or services they actually want), and by that conduct it materially misleads reasonable consumers, including Delacruz and the Class members who, in reliance on, and by reason of, Defendant's deception, have incurred expensive funeral services they did not need, did not want, were not obligated to purchase, and would not have purchased had they known they had the option to decline.

10.     Upon information and belief, in committing the wrongful acts alleged herein, Defendant SCI, in connection with its subsidiaries, affiliates, and other related entities (or their employees), planned, participated in and furthered a common scheme to induce members of the public to purchase its funeral "packages" by means of fraudulent, false, misleading, or deceptive representations and other unlawful conduct. Additionally, Defendant participated in the making of such representations in that it disseminated them, or caused them to be disseminated.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Defendant SCI for reasons including but not limited to the following: Plaintiff's claims against Defendant SCI arise out of its conduct within the State of California, including its dissemination within the State of California of the false and

misleading representations with respect to its funeral products and services.

12.     This Court has original subject matter jurisdiction over this putative class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat 4 (codified in various sections of Title 28 of the United State Code); specifically 28 U.S.C. § 1332(d)(2)(A), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."

13.     Because Plaintiff is a citizen of the State of California and Defendant is a citizen of Texas, at least one member of the plaintiff class is "a citizen of a State different from any defendant" in this litigation. Additionally, Plaintiff alleges that the matter in controversy is in excess of $5,000,000 (in the aggregate and exclusive of interest and costs). Finally, Plaintiff alleges that "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B)

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including Plaintiff's purchases of the subject funeral "package" in reliance on Defendant's dissemination of false and misleading information about its funeral products and services.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.     SCI'S SALES PROCESS IS DESIGNED TO DECEIVE GRIEVING CONSUMERS INTO PURCHASING FUNERAL PACKAGES THEY DO NOT WANT AND DO NOT NEED**

15.     Defendant SCI is the largest death care services provider in the United States, offering funeral, cremation, and burial services.  SCI's business model relies on foisting funeral service "packages" on consumers at all costs, even when consumers would prefer to simply purchase limited, or "a la carte," funeral services.

1       16.   SCI is a multibillion-dollar company traded on the New York Stock Exchange.  With

2   over 2,000 locations, it claims 16 percent of the $19 billion North American death care market. It has

3   24,000 employees and is the largest owner of funeral homes and cemeteries in the world.

4       17.   A recent "months-long investigation into pricing and marketing in the funeral

5   business" by National Public Radio ("NPR") revealed that death industry leaders like SCI employ "a

6   confusing, unhelpful system that seems designed to be impenetrable by average consumers, who must

7   make costly decisions at a time of grief and financial stress."[1]  According to NPR, SCI and other

8   death care industry service providers "aren't forthcoming about how much things cost, or embed the

9   information in elaborate package deals that can drive up the price of saying goodbye to loved ones."[2]

10       18.   SCI uses an "upselling strategy," whereby it sells consumers packages that bundle

11   together multiple goods and services.

12       19.   For example, NPR's investigation tells the story of Ellen Bethea, one of many

13   consumers who have been victimized by SCI's deceptive sales practices.   According to the

14   investigation, Bethea was only offered a single package of funeral services, and was not offered "a la

15   carte" pricing options. The package, known as the Honor Cremation Service, "included a number of

16   extra charges, including $495 for stationery and $345 for an Internet memorial," that she did not want

17   or need.[3]

18       20.   In short, SCI opts consumers in to pre-defined "packages," forcing them to

19   affirmatively opt *out* in order to receive a la carte services, which SCI effectively precludes them from

20   doing by erecting a series of roadblocks to ensure consumers are virtually never able to opt out of its

21   packages, which are larded with expensive and useless services.

22

23

24

---

25   [1] NPR News Investigations, *You Could Pay Thousands Less For A Funeral Just By Crossing The*

26   *Street* (Feb. 7, 2017), available at http://www.npr.org/2017/02/07/504020003/a-funeral-may-cost-
you-thousands-less-just-by-crossing-the-street

27   [2] *Id.*

28   [3] *Id.*

CLASS ACTION COMPLAINT

21.     By using these deceptive sales practices, SCI foists unwanted funeral packages upon the vast majority of the consumers who walk through its doors, including Plaintiff and the other members of the putative Class.

22.     Worse, SCI actively misrepresents that buying packages "saves money" for consumers.  In reality, the savings are illusory, since the purported discounts apply only to items consumers did not want, and would not have chosen but for SCI's deceptive sales practices.

23.     To wit, in internal documents, SCI admits that "packages" do not save consumers money.  In a presentation to Wall Street investors last year, SCI CEO Tom Ryan admitted that "[w]hat we find is when we deliver these packages, people tend to spend more money. . . Indeed, the company bragged that "consumers spend an extra $1,900, on average when they buy a package, versus an 'a la carte" funeral.'"[4] SCI's incentive for pushing packages is clear:  it causes consumers to spend more money than they otherwise would.

24.     In addition to being deceptive, misleading, and/or false, SCI's sales practices violate the Federal Trade Commission's (FTC) regulations governing funeral industry practice, also known as the "Funeral Rule" (16 C.F.R. §§ 453.1 *et seq.*).

25.     The Funeral Rule was promulgated to protect bereaved consumers by "mak[ing] it possible for you to choose only those goods and services you want or need and to pay only for those you select, whether you are making arrangements when a death occurs or in advance."[5]

26.     Among other things, the Funeral Rule requires funeral providers to provide potential customers with clear price information.

27.     For example, the Funeral Rule requires that funeral providers "[g]ive a printed or typewritten price list for retention to persons who inquire in person about the funeral goods, funeral services or prices of funeral goods or services offered by the funeral provider." 16 C.F.R. § 453.2(b)(4)(i)(A).  This itemized list, known as the general price list ("GPL"), is meant to help consumers pick and choose the specific, individual services they want and to filter out those they do

---

[4] *Id.*

[5] https://www.consumer.ftc.gov/articles/0300-ftc-funeral-rule

CLASS ACTION COMPLAINT

1   not.  The funeral provider must provide the GPL to the consumer before any discussion of the price

2   of funeral goods or services, the overall type of funeral service, or specific goods or services offered

3   by the provider. 16 CFR § 453.2(b)(4)(i)(A)(1)-(3).

4        28.     SCI fails to provide the requisite GPL at the specified time, and instead only provides

5   consumers with a series of "package options," which purport to list prices for individual services

6   *within* the packages. With occasional exceptions, as a general practice SCI does not inform consumers

7   that they have the right to choose the individual items or services they want from the package while

8   rejecting the others they do not want or need.

9        29.     While SCI sometimes provides a GPL, it does so only later in the sales process, *after*

10   the consumer has selected a package. In other cases, SCI never provides a GPL.  For example, SCI

11   never provided Plaintiff Delacruz with a GPL.

12        30.     Further, the Funeral Rule bars funeral service providers like SCI from

13   "[c]ondition[ing] the furnishing of any funeral good or funeral service to a person arranging a funeral

14   upon the purchase of any other funeral good or funeral service, except as required by law or as

15   otherwise permitted by this part[.]" 16 C.F.R.§ 453.4(b)(i)

16        31.     But this, in effect, is exactly what SCI does when it foists packages on  consumers.

17        32.     In short, SCI essentially ignores the FTC's express requirement to inform consumers

18   that "You may choose only the items you desire."  16 C.F.R. § 453.4(b)(ii)(2)(A).

19        33.     The Funeral Rule also states that "To prevent the unfair or deceptive acts or practices

20   specified in §§453.2 through 453.5, funeral providers must make all disclosures required by those

21   sections in a clear and conspicuous manner. Providers shall not include in the casket, outer burial

22   container, and general price lists, required by §§453.2(b)(2)-(4), any statement or information that

23   alters or contradicts the information required by this part to be included in those lists."  16 C.F.R. §

24   453.7.

25        34.     Again, by emphasizing package deals and foisting them upon consumers, SCI

26   "contradicts" the information, if any, provided in the GPL, which is itself provided only intermittently

27   and late in the sales process.

28

35.     As occurred with Plaintiff, it is SCI's corporate practice not to inform consumers during the sales process that they may choose a la carte services.  The only place SCI comes close to the required disclosure is in the fine print of the purchasing agreement, after it has foisted a package selection onto consumers, when it states vaguely, "you have been informed of your right to select only such services and merchandise as you desire, and that you have the legal right to arrange the funeral services for the deceased named above."

36.     As a general practice, SCI does not clearly or conspicuously inform consumers of their rights to select only the services and merchandise they desire. Indeed, during the entirety of the sales process, Claimant was not told and did not understand that she could select only the services she wanted.

37.     Ultimately, by reason of the conduct and practices alleged herein, Defendant materially misleads reasonable consumers, including Plaintiff Delacruz and the Class members who, in reliance on, and by reason of, Defendant's deception, have suffered injury in that they incurred expenses for funeral products or services they did not need, did not want, and were not obligated to purchase, but did not know they had the option to decline.

38.     Plaintiff Delacruz and the Class members would not have purchased Defendant's funeral "packages" had Defendant SCI not made deceptive, misleading, or false representations that purchasing a "package" was their only option and/or that purchasing a "package" would save them money.

39.     Defendant's false, misleading, and deceptive misrepresentations are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

**B.     SCI'S SERVICE FEES ARE REDUNDANT OR UNNECESSARY AND IN VIOLATION OF THE FUNERAL RULE**

40.     Moreover, many of the fees within the excessively-priced "packages" are themselves deceptive, redundant, and incorrectly described.  SCI charges consumers multiple "service fees" in violation of the Funeral Rule by charging these redundant costs that are common to virtually all forms of disposition or arrangement that they offer.

41.     For example, SCI charges $195 for use of a "service vehicle." This $195 charge is in addition to the $595 charge for "Transferring Remains to Funeral Home" *and* the $195 charge for "Funeral Vehicle/Hearse," *and* the $2,995.00 "Basic Professional Service Fee." The $195 "service vehicle" fee is excessive and redundant and in violation of the Funeral Rule, since the use of a service vehicle is reasonably already included in one or more of the many other service charges.

42.     The Funeral Rule provides that funeral providers may charge a basic service fee, and that fee shall include "all charges for the recovery of unallocated funeral provider overhead[.]" 16 C.F.R. § 453.2(b)(4)(C)(3)(iii)(C)(1). According to the FTC, if the service fee is non-declinable, the fee must include all charges for "services that are common to virtually all forms of disposition or arrangements that you offer[.]"[6]

43.     The use of a service vehicle is common to virtually all forms of disposition or arrangements that SCI offers and therefore was already included in the basic service fee, rather than as an additional cost. If the $195 service vehicle fee is optional, SCI certainly does not disclose that.

**C.     PLANITIFF'S PURCHSE OF AN SCI FUNERAL PACKAGE**

44.     In July 2014, Plaintiff Delacruz lost her fiancé, Robert Allen Palmero, Jr.

45.      Shortly thereafter, Plaintiff Delacruz called Lisle Funeral Home in Fresno, California, which is owned and operated by SCI. On that first phone call, the funeral home employee did not disclose SCI's pricing at all. Rather, the employee insisted on making an appointment for Plaintiff Delacruz to come to the funeral home.

46.     When Plaintiff arrived at the funeral home with her prospective mother-in-law, Linda Palmero. and her prospective brother-in-law, she was greeted by an SCI employee. Throughout the meeting that ensued, the SCI employee told Plaintiff she was required to choose and purchase package offering, as opposed to individual products or services.

47.     SCI presented Plaintiff with a series of packages. Plaintiff, knowing she would not be able to afford an expensive funeral, expressly told SCI she wanted something "affordable." SCI

---

[6] *See* "Complying with the Funeral Rule," at p. 9, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0131-complying-with-funeral-rule_0.pdf

selected the "memorial package," representing it as her cheapest option, and assuring her that purchasing this package would actually save her money. Plaintiff again asked if there was any way to make it cheaper, whereupon SCI' representative told her, "No, this is what it costs."

48.     SCI repeatedly assured Plaintiff the "memorial package" was her cheapest option, even after she repeatedly asked if any of the included services could be eliminated.  For example, Plaintiff Delacruz specifically asked if SCI could remove a memorial book, forego an internet announcement, and reduce the number of printed notices for the service.  Despite knowing that literally every penny mattered to Plaintiff, SCI's representative repeatedly told her that none of those items, or any other item, could be removed from the package.

49.     In the end, the cost of Plaintiff's package was over $7,000, and it was filled with items she did not want or need. For example, the package included a guest book, memorial book, far too many programs, and a website. SCI did not tell Plaintiff she could exclude those unwanted items, and Plaintiff had no idea she could refuse to purchase them. Had she been so informed, she would not have purchased them.

## CLASS ACTION ALLEGATIONS

34.     <u>Description of the Class</u>:  Plaintiff brings this class action on behalf of herself and a Class defined as follows:

> All natural persons in the state of California who paid for a funeral
> package at a funeral home owned by SCI (the "Class").

35.     Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

36.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual class members would use to prove those elements in individual actions alleging the same claims.

37.     <u>Numerosity, Rule 23(a)(1)</u>:  The members of the proposed Class are so numerous that individual joinder of all members is impracticable.

38.     <u>Common Questions of Law and Fact Predominate, Rule 23(a)(2)</u>:  There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  All Class members were exposed to Defendant's deceptive and misleading practices relative to its funeral products and services. Additional common questions of law and fact include:

a.      Whether SCI gives consumers the required GPL before discussing with them the prices of funeral goods or funeral services, the overall type of funeral service or disposition, or specific funeral goods or funerals services offered by SCI;

b.      Whether SCI informs consumers that they have the right to pick and choose the services they would like rather than buy an entire package;

c.      Whether SCI conditions the furnishing of any funeral good or funeral service upon the purchase of any other funeral good or funeral service;

d.      Whether SCI improperly charges consumers a service vehicle fee when that fee should be included in SCI's basic service fee;

e.      Whether SCI engaged in unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce;

f.      Whether SCI should be ordered to pay actual damages to Plaintiff and the other members of the Class;

g.      Whether SCI should be ordered to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

h.      Whether SCI should be ordered to pay statutory damages, as provided by the California Consumers Legal Remedies Act, to Plaintiff and the other members of the Class;

i.      Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution; and

j.      Whether SCI should be ordered to pay attorneys' fees and costs.

39.     <u>Typicality, Rule 23(a)(3)</u>:  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by SCI's deceptive, misleading, and ultimately unlawful conduct. Similar or identical statutory violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both number and importance, to the numerous common questions that dominate this action. Moreover, the common

CLASS ACTION COMPLAINT

1  questions will yield common answers. Additionally, there are no defenses available to SCI that are

2  unique to Plaintiff.

3       40.   Adequacy of Representation, Rule 23(a)(4):   Plaintiff will fairly and adequately

4  represent and protect the interests of the Class because her interests do not conflict with those of the

5  Class members. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress

6  against Defendant. Plaintiff has retained counsel with substantial experience in prosecuting complex

7  and class action litigation and arbitration.   Plaintiff and her counsel are committed to vigorously

8  prosecuting this action on behalf of the Class, and have the financial resources to do so.

9       41.   Injunctive or Declaratory Relief; Rule 23(b)(2):  The requirements for maintaining a

10  class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds

11  generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding

12  declaratory relief with respect to the Class as a whole.

13       42.   Superiority of Class Action; Rule 23(b)(3):  Plaintiff and the members of the Class

14  suffered, and will continue to suffer, harm as a result of SCI's unlawful and wrongful conduct.   A

15  class action is superior to other available methods for the fair and efficient adjudication of the present

16  controversy for reasons included but not limited to the following:

17

18     a.   The damages individual class members suffered are small compared to the burden and
           expense of individual prosecution of the complex and extensive litigation needed to
19         address Defendant's conduct.

20     b.   It would be virtually impossible for the individual class members to effectively redress
           the wrongs done to theme. Even if the Class members could afford such individual
21         litigation, the court system could not. Individualized litigation would unnecessarily
           increase the delay and expense to all parties and to the court system and presents a
22         potential for inconsistent or contradictory rulings and judgments. By contrast, the class
           action device presents far fewer management difficulties, allows the hearing of claims
23         which might otherwise go unaddressed because of the relative expense of bringing
           individual lawsuits, and provides the benefits of single adjudication, economies of
24         scale, and comprehensive supervision by a single court.

25     c.   The prosecution of separate actions by the individual members of the Class would
           create a risk of inconsistent or varying adjudications with respect to individual Class
26         members, which would establish incompatible standards of conduct for Defendant.

27     d.   The prosecution of separate actions by individual Class members would create a risk
           of adjudications with respect to them that would, as a practical matter, be dispositive

28

of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

**FIRST CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 *et seq*.**

43.     Plaintiff incorporates by reference the preceding paragraphs.

44.     The UCL defines "unfair competition" to include "any unlawful, unfair, or fraudulent act or practice," as well as "any unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

45.     By engaging in the acts and practices described herein, Defendant commits one or more acts of "unfair competition" within the meaning of the UCL.

46.     Defendant committed, and continues to commit unlawful business acts or practices in violation of the UCL by, among other things, violating the California Legal Remedies Act (CLRA), as set forth below, and by violating the Funeral Rule (16 C.F.R. §§ 453.1 *et seq*.)

47.     Defendant committed, and continues to commit, "unfair" business practices in violation of the UCL by, among other things:

   a.   engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the members of the Class;

   b.   engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and

   c.   engaging in conduct that undermines or violates the spirit of intent of the consumer protection laws that this Class Action Complaint invokes.

48.     Defendant commits unlawful, unfair, and/or fraudulent business practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and does deceive reasonable consumers, including Plaintiff and the Class members.

49.     As detailed above, Defendant's unlawful, unfair, and fraudulent practices include: (a) making deceptive, misleading, or false representations that lead consumers to believe they are required to purchase funeral "packages;" (b) making deceptive, misleading, or false representations that purchasing said "packages" will save consumers money; (c) failing to inform consumers of their right to purchase only the funeral products or services they want in violation of 16 C.F.R. § 453.4(b); (d) failing to give consumers  who inquire in person a printed or typewritten price list for retention

13
CLASS ACTION COMPLAINT

detailing the funeral goods, funeral services or prices of funeral goods or services offered by the funeral provider in violation of 16 C.F.R. § 453.2(b)(4)(i)(A); (e) failing to provide consumers with the requisite GPL before any discussion of the price of funeral goods or services, of the overall type of funeral service, or of specific goods or services offered by the provider in violation of 16 CFR § 453.2(b)(4)(i)(a)(1)-(3); (f) conditioning the furnishing of any funeral good or funeral service to a person arranging a funeral upon the purchase of any other funeral good or funeral service, except as required by law or as otherwise permitted by this part" in violation of 16 C.F.R. § 453.4(b)(1); (g) failing to make all disclosures required by the Funeral Rule in a clear and conspicuous manner, as required by 16 C.F.R. § 453.7; and (h) assessing multiple, improper service fees in violation of 16 C.F.R. § 453.2(b)(4)(3)(C)(iii)(C)(1).

50.    Plaintiff and the Class members believed and relied upon Defendant's foregoing deceptive, misleading, or false representations or omissions in deciding to purchase its funeral packages, and would not have purchased Defendant's funeral packages but for its utilization of the foregoing unlawful, unfair, or fraudulent business acts or practices in violation of the UCL.

51.    Plaintiff and the Class members are injured in fact and lose money as a direct and proximate result of Defendant's unlawful, unfair, and/or fraudulent business practices in that they incurred expenses for funeral products or services they did not need, did not want, were not obligated to purchase, and would not have purchased had they known they had the option to decline.

52.    Plaintiff and the Class members seek declaratory relief, restitution for monies wrongfully obtained by Defendant, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under Bus. & Prof. Code § 17203, including but not limited to enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent conduct alleged herein.

### SECOND CLAIM FOR RELIEF
### Consumers Legal Remedies Act (CLRA) Cal. Civ. Code § 1750 *et seq*.

53.    Plaintiff incorporates by reference the preceding paragraphs.

54.    Plaintiff and each of the Class members are "consumers" within the meaning of Civil Code § 1761(d).

55.     Plaintiff's and the Class members' purchase of funeral packages are "transactions" within the meaning of Civil Code § 1761(e).

56.     Defendant's provision of funerals and items associated with funerals are "goods" and/or "services" within the meaning of §§ 1761(a)-(b).

57.     Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods or services to any consumer.

58.     Under section 1770(a) of the CLRA:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

* * * * *

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

* * * * *

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

* * * * *

(9) Advertising goods or services with intent not to sell them as advertised.

* * * * *

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

59.     As detailed above, Defendant has engaged, and continues to engage, in unfair methods of competition and has undertaken unfair or deceptive acts or practices in violation of the foregoing sections of the CLRA by, among things: (a) making deceptive, misleading, or false representations that lead consumers to believe they are required to purchase funeral "packages;" (b) making deceptive, misleading, or false representations that purchasing said "packages" will save consumers money; (c) failing to inform consumers of their right to purchase only the funeral products or services they want in violation of 16 C.F.R. § 453.4(b); (d) failing to give consumers who inquire in person a

1  printed or typewritten price list for retention detailing the funeral goods, funeral services or prices of

2  funeral goods or services offered by the funeral provider in violation of 16 C.F.R. § 453.2(b)(4)(i)(A);

3  (e) failing to provide consumers with the requisite GPL before any discussion of the price of funeral

4  goods or services, of the overall type of funeral service, or of specific goods or services offered by

5  the provider in violation of 16 CFR § 453.2(b)(4)(i)(a)(1)-(3); (f) conditioning the furnishing of any

6  funeral good or funeral service to a person arranging a funeral upon the purchase of any other funeral

7  good or funeral service, except as required by law or as otherwise permitted by this part" in violation

8  of 16 C.F.R. § 453.4(b)(1); (g) failing to make all disclosures required by the Funeral Rule in a clear

9  and conspicuous manner, as required by 16 C.F.R. § 453.7; and (h) assessing multiple, improper

10  service fees in violation of 16 C.F.R. § 453.2(b)(4)(3)(C)(iii)(C)(1).

11     60.    Plaintiff and the Class members believed and relied upon Defendant's foregoing unfair

12  methods of competition and/or deceptive acts or practices in deciding to purchase its funeral packages,

13  and they would not have purchased Defendant's funeral packages but for its utilization of the

14  foregoing unfair methods of competition and/or deceptive acts or practices in violation of the CLRA.

15     61.    Plaintiff and the Class members are injured in fact and lose money as a direct and

16  proximate result of Defendant's unfair methods of competition and/or deceptive acts or practices in

17  that they incurred expenses for funeral products or services they did not need, did not want, were not

18  obligated to purchase, and would not have purchased had they known they had the option to decline.

19     62.    Plaintiff and the Class members seek declaratory relief, injunctive relief, and other

20  relief allowable under Bus. & Prof. Code § 17203, including but not limited to enjoining Defendant

21  from continuing to engage in the unfair, unlawful, and fraudulent conduct alleged herein.

22     63.    Pursuant to Section 1782(d) of the CLRA, Plaintiff reserves the right to amend this

23  Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the CLRA

24  within thirty (30) days of providing the required notice.

25     64.    Plaintiff's affidavit stating facts showing that venue in this District is proper pursuant

26  to Cal. Civ. Code § 1780(c) is attached hereto.

27                              **REQUEST FOR RELIEF**

28     WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class

proposed in this Complaint, respectfully prays for judgment in her favor and against SCI as follows:

1.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

2.    Issuing an injunction prohibiting SCI from continuing to engage in the deceptive and unlawful acts and practices described herein;

3.    Ordering SCI to disgorge and make restitution of all monies it acquired by means of the deceptive and unlawful practices set forth above;

4.    Ordering SCI to pay compensatory damages to Plaintiff and the other members of the Class according to proof;

5.    Ordering SCI to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

6.    Ordering SCI to pay statutory damages, as allowable by law;

7.    Order SCI to pay attorneys' fees and costs; and

8.    All other relief the Court deems necessary.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: January 28, 2018           Respectfully submitted,

/s/ Jeffrey D. Kaliel
Jeffrey D. Kaliel (CA Bar No. 238293)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
*jkaliel@kalielpllc.com*

Melissa Weiner (pending *pro hac vice*)
Christopher Moreland (pending *pro hac vice*)
HALUNEN LAW
80 South 8th Street, Suite 1650
Minneapolis, MN 55402
(612) 605-4098

Attorneys for Plaintiff and the Putative Class