# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROSALINDA DELACRUZ, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SERVICE CORPORATION INTERNATIONAL,**<br><br>**Defendant.** | 1:18-cv-00154-LJO-EPG<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>ECF No. 6 |

## I. <u>INTRODUCTION</u>

On January 28, 2018, Plaintiff, Rosalinda Delacruz, filed the instant class action complaint individually and on behalf of others similarly situated against Service Corporation International ("SCI" or "Defendant"), alleging that she was the victim of Defendant's deceptive and misleading marketing practices. ECF No. 1, Complaint ("Compl.") at 5. Plaintiff alleges that in July of 2014 she was induced to purchase an expensive funeral package from the Lisle Funeral Home, which was owned and operated by Defendant SCI, following the death of her fiancé. On March 8, 2018, SCI filed the instant motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 6 ("Motion"). On April 18, 2018, Plaintiff filed her opposition to the motion. ECF No. 10 ("Opp."). On April 25, 2018, Defendant filed a reply in support of his motion. ECF No. 11 ("Reply"). This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule

1

230(g).

## II. BACKGROUND

In support of its motion to dismiss, SCI submits a declaration from Janet S. Key, Secretary of SCI Shared Resources, LLC, and Corporate Secretary of SCI California Funeral Services, Inc. ("SCI Cal"), both subsidiaries of Defendant SCI. ECF No. 6-3 ("Key Declaration") ¶ 1. Key testifies that Lisle Funeral Home, the entity that Plaintiff contracted with, is owned and operated by SCI Cal, not SCI. *Id.* ¶ 3. She further avers that SCI is a publicly-held Texas corporation that has no employees. *Id.* ¶ 4. Rather, it is a holding company that "conducts no business in the State of California." *Id.* ¶ 5. She states that SCI is not a party to any contracts or business relationships with Plaintiff. *Id.* ¶ 8. Further, she states that SCI does not manage the business activities of any funeral establishment, cemetery, or other local facility in the State of California that is owned or operated by any direct or indirect subsidiary, including SCI Cal and the Lisle Funeral Home. *Id.* ¶¶ 10, 12.

Key testifies that SCI "does not hire or fire employees working at locations owned and operated by SCI Cal, does not promulgate their work rules or assignments, and does not set their compensation, benefits, schedules, or rates or methods of payment" and that it is "not involved in the supervision or discipline of employees working at SCI Cal locations." *Id* ¶ 15. She also indicates that SCI Cal's finances are maintained separately from SCI and that the two entities have separate corporate documents that are separately maintained. *Id.* ¶¶ 17-20. In short, Key avers that "SCI does not own, supervise, manage or otherwise control any of the funeral, cemetery or crematoria locations owned and operated by SCI Cal, including Lisle Funeral Home." *Id.* ¶ 23.

In response, Plaintiff asserts that SCI Cal is not truly a legally separate entity from SCI, but rather that it operates as SCI's alter ego or agent in the forum. Therefore, Plaintiff posits, SCI Cal's activity in the forum – which unquestionably gives rise to jurisdiction over SCI Cal – can be imputed to SCI. In support of their agency and alter ego theories of personal jurisdiction, Plaintiff asserts the following facts:

- a Google search for "California Funeral Services, Inc.," leads directly to the website for Defendant SCI International;
- SCI markets the Lisle Funeral Home under its uniform, nationwide "Dignity Memorial" brand; (Kaliel Decl. Ex. 2, Printouts from SCI Int'l Website);
- SCI Cal and the Lisle Funeral Home use a form sales agreement that discovery will almost certainly confirm was drafted or approved for use by SCI;
- SCI and SCI Cal (and the Lisle Funeral Home) share corporate offices (See ECF No. 6-4, Def. RJN Ex. 3, Printout from website for Office of the Secretary of State of Texas for SCI; ECF No. 6-4, Def. RJN Ex. 1, Fictitious Business Name information for SCI Cal; Kaliel Decl. Ex. 3, Cal. Sec. of State Business Search – Entity Detail re: Lisle Funeral Home);
- while SCI purports to be a "holding company only" with "no employees," it represents itself to the world as having "24,000 dedicated <u>employees</u>" who work "from a network of 2,000 funeral homes and cemetaries [sic]" (Kaliel Decl. Ex. 2 Printouts from SCI Website (emphasis added));
- SCI purports to provide d[sic] its "24,000 dedicated employees" with "the finest training and development system in the industry" (*id.*);
- SCI maintains a "Careers" page on its website, where it recruits on its own behalf and seeks employees to fill job openings at funeral homes across the country, including many in California and at least one at the Lisle Funeral Home (*id.*); and
- SCI has a "Code of Conduct and Ethics for Officers and Employees" that governs the conduct of "all officers and employees of Service Corporation International and its affiliated companies," and that allows it to take "disciplinary action" against any employee at any of its funeral homes in the event of a violation, "up to and including termination of employment."

ECF No. 10 at 12-13.

### III. LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1073 (9th Cir. 2011). When the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008 (quotation marks and citation omitted). In resolving the motion on written materials, the court must "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (alteration in original) (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). "That is, the plaintiff need only

3

demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff cannot solely rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Boschetto*, 539 F.3d at 1015. "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.), *supplemented*, 95 F.3d 1156 (9th Cir. 1996).

## IV. DISCUSSION

**A.** **Personal Jurisdiction**

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *See* Fed. R. Civ. P. 4(k)(1)(A). Under California's long-arm statute, courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code Ann. § 410.10 (2004). Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, the question here is whether assertion of personal jurisdiction over SCI comports with the limits imposed by federal due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). It is well established that the Fourteenth Amendment's Due Process Clause limits the power of a court to exercise jurisdiction over out-of-state defendants who do not consent to jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011). There are two kinds of personal jurisdiction that a court may exercise over a foreign defendant. *Id.* at 919. The first, known as "general jurisdiction," exists if the defendant's contacts with the forum are "so substantial and of such a nature as to justify suit against it

on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). The second, known as "specific jurisdiction," exists where the litigation is derived from obligations that "arise out of or are connected with the [company's] activities within the state." *Id*. at 319.

General jurisdiction permits the court to hear all claims against a defendant whose affiliations with the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State. i.e., comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The touchstone for asserting specific jurisdiction over a nonresident defendant is "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation omitted). "The proper question is whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 1125. The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction: (i) the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (ii) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. Once the plaintiff carries this burden, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id*.

Plaintiff does not specify in the Complaint or in her opposition brief whether she believes that the Court has general or specific jurisdiction over Defendant SCI. In the Complaint, Plaintiff asserts only that "[t]his Court has personal jurisdiction over Defendant SCI for reasons including but not limited to the following: Plaintiff's claims against Defendant SCI arise out of its conduct within the State of

California, including its dissemination within the State of California of the false and misleading representations with respect to its funeral products and services." Compl. ¶ 11. Defendant argues that SCI and SCI Cal are entirely distinct corporate entities, and the SCI has no contacts with the forum sufficient to justify the exercise of general or specific jurisdiction over it. Therefore, Defendant moves to dismiss the Complaint for lack of personal jurisdiction.

In her opposition brief, Plaintiff argues that SCI Cal is effectively SCI's alter ego and agent, such that the two are not legally distinct corporate entities. The Court will address the alter ego and agency theories of personal jurisdiction as they apply to both general and specific jurisdiction.

### 1. General Jurisdiction

Plaintiff does not assert that SCI itself had "continuous and systematic" affiliations with the forum, but rather that the distinction between SCI and SCI Cal was virtually non-existent such that SCI Cal's contact with the forum could be imputed to SCI directly, thereby conferring jurisdiction on it.

#### a. Agency And Alter Ego Tests

However, the Ninth Circuit has "permitted a plaintiff to pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests: the 'agency' test and the 'alter ego' test." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). Although each test allows the Court to impute jurisdiction, the theoretical underpinnings behind each test differ in important respects. As a Nevada court explained:

> The alter ego theory allows plaintiffs to pierce the corporate veil to impute a subsidiary's contacts to the parent company by showing that the subsidiary and the parent are one and the same. . . . The rationale behind this theory is that the alter ego subsidiary is the same entity as its parent, and thus, the jurisdictional contacts of the subsidiary are also jurisdictional contacts of the parent. *Patin,* 294 F.3d at 653. Unlike with the alter ego theory, the corporate identity of the parent company is preserved under the agency theory; the parent nevertheless "is held for the acts of the [subsidiary] agent" because the subsidiary was acting on the parent's behalf. *F. Hoffman–La Roche, Ltd. v. Superior Court,* 130 Cal.App.4th 782, 30 Cal.Rptr.3d 407, 418 (2005) (internal quotation marks omitted); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 863 F.Supp. 186, 188–89 (D.Del.1993) ("This [agency] theory does not treat the parent

and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts.").

*Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1157 (Nev. 2014) (citations omitted).

### b. Agency Theory Of General Jurisdiction

Prior to the Supreme Court's decision in *Daimler*, the Ninth Circuit recognized an agency theory of general jurisdiction. *See Unocal Corp.*, 248 F.3d at 928-29. Under that theory, a subsidiary's activity in a forum could be imputed to the parent company where the subsidiary acted as the parent's agent. *Id.* In *Daimler*, the Supreme Court rejected the agency test for purposes of general jurisction, holding that a foreign corporation cannot be subject to general jurisction based on an agency relationship through its subsidiary's contacts with the forum. Since Plaintiff does not allege any direct contact by SCI with the forum – never mind "continuous and systematic" conduct – Plaintiff fails to assert that this Court has general jurisdiction over SCI. However, because the Supreme Court explicitly reserved the question of whether an agency analysis might be relevant to the specific jurisdiction context, the Court analyzes the agency theory only in the specific jurisdiction context below. *See Daimler*, 571 U.S. at 135 n.13 ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction") (emphasis in original). After *Daimler*, the alter ego theory could still suffice to confer either specific or general jurisdiction over SCI. The Court will also discuss that theory as it relates to this case below.

### 2. Alter Ego Analysis

To survive a Rule 12(b)(2) motion on an alter ego theory a plaintiff must make a *prima facie* showing that both: (1) there is a unity of interest and ownership between the corporations such that their separate personalities do not actually exist, and (2) treating the corporations as separate entities would result in injustice. *Ranza*, 793 F.3d at 1073 (quoting *Unocal*, 248 F.3d at 926). The first prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (quoting *AT & T Co.*, 94 F.3d at 591). It requires such "pervasive control" that it can only be met where a parent corporation "dictates every facet of the

7

subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* The Ninth Circuit has emphasized that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)). Nor can the first prong be met by only showing "an active parent corporation involved directly in decision-making about its subsidiaries' holdings" where the corporations "observe all of the corporate formalities necessary to maintain corporate separateness." *Unocal*, 248 F.3d at 928. Courts consider nine factors when assessing the first prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014)).

In support of her assertion that SCI Cal is SCI's alter ego, Plaintiff offers the following information in her opposition brief:

- A Google search for "California Funeral Services, Inc.," leads directly to the website for Defendant SCI International;
- SCI markets the Lisle Funeral Home under its uniform, nationwide "Dignity Memorial" brand;
- SCI Cal and the Lisle Funeral Home use a form sales agreement that discovery will almost certainly confirm was drafted or approved for use by SCI;
- SCI and SCI Cal (and the Lisle Funeral Home) share corporate offices[;]
- while SCI purports to be a "holding company only" with "no employees" it represents itself to the world as having "24,000 dedicated employees" who work "from a network of 2,000 funeral homes and cemeteries";
- SCI purports to provided [sic] its "24,000 dedicated employees" with "the finest training and development system in the industry"
- SCI maintains a "Careers" page on its website, where it recruits on its own behalf and seeks employees to fill job openings at funeral homes across the country, including many in California and at least one at the Lisle Funeral Home; and

8

- SCI has a "code of Conduct and Ethics for Officers and Employees" that governs the conduct of "all officers and employees of Service Corporation International and its affiliated companies," and that allows it to take "disciplinary action" against any employee at any of its funeral homes in the event of a violation, "up to an including termination of employment."

ECF No. 10 at 12-13 (citations omitted).

Plaintiff's evidence (as opposed to unsupported allegations), taken in the light most favorable to her, appears to implicate the fourth, fifth, and eighth factors of the first prong of the alter ego analysis. Accepting Plaintiff's factual assertions as true, Plaintiff asserts that the corporations share officers, employees, and corporate office space, that they market themselves as an integrated company on their website, and that SCI is involved in some of SCI Cal's business affairs, including the branding of services and employment decisions. Taken as a whole, these factors are insufficient to state a prima facie case that there is a "unity of interest and ownership" between the entities.

First, the fact that the corporations share officers and offices is not sufficient to demonstrate that SCI Cal is SCI's alter ego. *See Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1135 (a parent and its subsidiary sharing offices and leadership, even where parent holds 100% stock ownership in subsidiary, is not sufficient to satisfy the unity of interest test); *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-CV-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (concluding that the unity of interest was not met even where parent and subsidiary "share common leadership and office space") (citations omitted).

Second, the marketing of SCI as an integrated company on its website is not sufficient evidence that SCI Cal is a mere conduit for SCI, nor that the entities have disregarded corporate formalities. *See Corcoran*, 169 F. Supp. 3d at 984 ("courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interests required to show companies are alter egos") (collecting cases); *Payoda*, 2015 WL 4593911, at *3 ("marketing puffery" on a shared website "carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"); *Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073, 2008 WL 2128955, at *3 (N.D. Cal.

9

May 20, 2008) ("[g]eneric language on [a company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent").

Third, SCI's alleged involvement in some of SCI Cal's business activities, such as its implementation of a policy governing hiring and disciplining employees and advertising employment opportunities on its website, are insufficient to show the requisite level of control over the subsidiary.[1] This type of general oversight over a subsidiary's operations does not rise to the level of pervasive and direct control required for the assertion of personal jurisdiction. *See Tahaya Misr Inv., Inc.*, 2016 WL 9024808, at *6 ("all of the evidence produced by plaintiff merely suggests that Helwan is the subsidiary of SCC and Italcementi and that, at most, these companies exercise broad oversight over Helwan's operations"); *Weisler v. Cmty. Health Sys., Inc.*, No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *13 (D.N.M. Sept. 27, 2012) (recruiting and hiring policy, which required parent's leadership to approve the subsidiary's new hires at the management level was "not sufficiently detailed or pervasive to constitute domination over the Hospital's day-to-day operations") (collecting cases).

The areas of overlap between the parent and subsidiary, even taken together, are insufficient to demonstrate a "unity of interest" sufficient for a determination of alter ego. Nothing alleged in the Complaint or asserted by Plaintiff in connection with this motion to dismiss indicates that the legal distinction between SCI and SCI Cal is effectively a sham or that SCI directs all of SCI Cal's business activities. *See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (finding no alter ego or agency relationship was created where parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions); *Compagnie Bruxelles Lambert*, 94 F.3d at 591 (concluding that jurisdiction could not be imputed where evidence showed a "normal parent-

---

[1] Plaintiff also states its suspicion that SCI drafted some version of the form sales agreement signed by Plaintiff. Plaintiff's evidence of that does not rise above the speculative level and therefore is insufficient to state a prima facie case. Even if some version of the sales agreement were disseminated to SCI's subsidiaries by the parent corporation, it would not necessarily be evidence, absent more, of the type of day-to-day control necessary for an alter ego designation.

10

subsidiary relationship"). The evidence set forth by Plaintiff falls far short of what is required to make a prima facie case that SCI maintains "pervasive control" over SCI Cal or that it "dictates every facet of [SCI Cal's] business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073; *Stewart*, 81 F. Supp. 3d at 956 (finding that a showing of the third, fourth, and ninth factors "even when considered together, are not sufficient to support a finding of unity of interest among" the defendants); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-CV-01431-PMP-PAL, 2009 WL 455653, at *5 (D. Nev. Feb. 23, 2009) ("a parent may review and approve major decisions, place its own directors on the subsidiary's board, and share offices and staff with its wholly owned subsidiary without being considered its alter ego").

Moreover, Plaintiff offers no evidence to support the second prong of the alter ego test. Plaintiff does not explain why treating SCI and SCI Cal as separate entities would result in injustice to this Plaintiff.[2] *See Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-CV-01001-CAS-AFMX, 2016 WL 9024808, at *6 (C.D. Cal. May 23, 2016) (citing *Ranza*, 793 F.3d at 1073).

Plaintiff fails to make a prima facie showing that SCI Cal is SCI's alter ego, and therefore fails to establish at this stage that this Court has personal jurisdiction over Defendant SCI.

### 3. Agency Analysis

In rejecting the agency theory for general jurisdiction purposes, the Supreme Court expressly reserved the possibility that the agency relationship between related entities could confer specific jurisdiction on a parent or holding company. *Daimler*, 571 U.S. at 135 n.13 ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction") (emphasis in original). However, the Court's reasoning in *Daimler* suggests that the use of such relationships to impute

---

[2] Generally, the injustice prong requires a showing that the entities involved abused the corporate form, such as through under-capitalization or by acting in bad faith to avoid creditors. *See Kingsburg Apple Packers, Inc. v. Ballantine Produce Co.*, No. 1:09-CV-901-AWI-JLT, 2010 WL 2817056, at *4 (E.D. Cal. July 16, 2010) ("[I]t is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result.'" (citations omitted)). Plaintiff has not set forth *any* evidence that would meet the second prong of the alter ego test.

jurisdiction from one legal entity to another is limited. As the *Daimler* court noted, the agency inquiry "stacks the deck, for it will always yield a pro-jurisdiction answer." *Id.* at 136. That reasoning would seem to apply with equal force in the specific jurisdiction context, as several other courts in this circuit have recognized. *See Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*, No. 13-cv-01180–BLF, 2015 WL 4755335, at *5 (N.D. Cal. Aug. 11, 2015) ("the rationale set forth in *Daimler*—that the Ninth Circuit's agency test inappropriately 'stacks the deck'—would seem to undermine application of the [Ninth Circuit's agency test] even in specific jurisdiction cases"); *Corcoran*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (agreeing with the reasoning in *Los Gatos Mercantile*). Indeed, the Ninth Circuit has recognized that its own formulation of the agency test as set forth in *Unocal* is "clearly irreconcilable" with *Daimler's* holding. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017). Assuming that a more limited version of the agency test is still viable after *Daimler*, the relevant question is whether Plaintiff has set forth evidence that SCI Cal acted on behalf of SCI *and* was subject to its control in the forum. *Id.* "[U]nder any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Id.* at 1024-25.

In support of its agency theory, Plaintiff sets forth the same facts that the Court considered with respect to its alter ego analysis. As the Ninth Circuit noted in in *Williams*, the "[f]undamental of agency theory require that an agent 'act on the principal's behalf and subject to the principal's control.'" 851 F.3d at 1024 (quoting Restatement (Third) Of Agency § 1.01 (2006)). As explained above, Plaintiff failed to set forth facts demonstrating that SCI "ha[d] the right to substantially control its subsidiary's activities." *Id.* (citations omitted). At most, the facts set forth by Plaintiff indicated that SCI held itself out as operating an integrated network of funeral homes where it had some high level control over employment policies and marketing and branding policies. Therefore, even assuming that the agency theory of specific personal jurisdiction is still valid, Plaintiff fails to establish a prima facie case for

jurisdiction over SCI.[3]

**B.     Jurisdictional Discovery**

Plaintiff requests permission to conduct jurisdictional discovery in the event that the Court finds that she has not made a prima facie showing of personal jurisdiction. Because the Court concludes that Plaintiff has not set forth evidence – neither in her Complaint nor in connection with this motion – that makes a prima facie case for personal jurisdiction, the Court turns to the alternative question of jurisdictional discovery.

Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "District courts have a significant amount of leeway in deciding whether to grant plaintiffs leave to conduct jurisdictional discovery while a motion to dismiss is pending." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013) (internal quotation marks and citation omitted). The Ninth Circuit has adopted a liberal standard for granting jurisdictional discovery, noting that it should "ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,

---

[3] Previously, the Ninth Circuit recognized that a subsidiary's activity in the forum cannot be imputed to its parent when the parent functions as a holding company that treats the subsidiary merely as its investment. In *Doe v. Unocal Corp.*, the Ninth Circuit recognized that:
> [w]here a holding company is nothing more than an investment mechanism [, i.e.,] a device for diversifying risk through corporate acquisitions[,] the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out entirely at the parent level.

248 F.3d 915, 929 (9th Cir. 2001) (citations omitted), *overruled on other grounds by Daimler*, 571 U.S. 117; *see also Sarafian v. Wright Med. Tech., Inc.*, No. 2:15-CV-09397-CAS-KSX, 2016 WL 1305087, at *5-7 (C.D. Cal. Apr. 1, 2016) ("even though [subsidiary] acts as the 'operating entity' of [parent], it does so "not as [parent's] agent . . . but as its investment . . . ." (internal quotation marks and citations omitted)); *Sukonik v. Wright Medical Technology, Inc.*, Case No. 2:14-cv-08278-BRO-MRW, 2015 WL 10682986, at *12 (C.D. Cal. Jan. 26, 2015) (holding that in light of "evidence that [parent] is a holding company with no employees, and that it conducts no business in California . . . there is no basis to conclude that [parent] functions as [subsidiary's] agent."). It is not clear the extent to which this portion of the test was altered by the Ninth Circuit's decision in *Williams*, 851 F.3d at 1024; however, the Court notes that applying *Unocal's* holding company/parent distinction here would also militate in SCI's favor. Here, Defendant avers that SCI is merely a holding company with no employees of its own. It operates SCI Cal as its investment. Therefore, under the Ninth Circuit's agency analysis, SCI Cal is not SCI's agent, and the agency theory of personal jurisdiction does not apply.

788 F.2d 535, 540 (9th Cir. 1986) (internal quotation marks and citations omitted). However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted). "In other words, limited discovery should not be permitted to conduct a fishing expedition." *Johnson v. Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) (internal quotation marks and citations omitted).

This case presents a close call. On one hand, the evidence that Plaintiff sets forth in support of her alter ego theory is legally insufficient to support an alter ego or agency theory. Plaintiff contends that SCI holds itself out to be an integrated company with employees, that it markets its "Dignity Memorial" brand through its subsidiaries, and that it maintains employment and other policies that exist across its subsidiaries. As explained above, none of these contentions supports Plaintiff's theory that SCI and SCI Cal share such a unity of interest that "the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (citations omitted). Nor do any of Plaintiff's contentions suggests that SCI Cal and SCI have done away with corporate formalities, as would be required to pierce the corporate veil for jurisdictional purposes. Plaintiff has not demonstrated that SCI and SCI Cal's parent-subsidiary relationship was out of the ordinary, and, as Plaintiff readily concedes, the existence of a parent-subsidiary relationship standing alone does not demonstrate the existence of an agency or alter ego relationship. *See* ECF No. 10 at 14; *Companie Bruxelles Lambert*, 94 F.3d at 590.

On the other hand, the threshold for granting jurisdictional discovery is low. *See Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1135 (jurisdictional discovery was warranted where evidence set forth by plaintiff adduced that parent officer had drafted one of the subsidiary's key agreements with plaintiff, a fact which "might well be properly characterized as inconsistent with the parent corporation's investor status, and more like control over day-to-day activities"). Plaintiff correctly points out that some of the

14

facts set forth in the Key Declaration at least appear to contradict SCI's own corporate filings, governing documents, and public representations. ECF No. 10 at 7-8. For example, although the Key Declaration insists that SCI is not involved in hiring, firing, or discipline, SCI represents on its website and in corporate filings, that it employs thousands of individuals and promulgates a Code of Conduct for Officers and Employees that governs disciplinary issues. Likewise, although Key claims that SCI is "not involved" in the supervision or discipline of employees, SCI does promulgate a code of conduct for employees, which is posted on its website and mentioned in its corporate filings. While these discrepancies may well not be an indication that corporate formalities between SCI and SCI Cal are not properly observed, it does point to issues regarding SCI's involvement in the operations of SCI Cal that could be clarified in discovery. *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1135 (remanding to the district court after concluding that "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction").

Similarly, SCI emphasizes its "transcontinental branding strategy . . . intended to emphasize our seamless national network of funeral service locations and cemeteries" in its corporate filings. *See* SCI, Annual Report (Form 10-K) (Feb. 13, 2015), *available at* https://www.sec.gov/Archives/edgar/data/89089/000008908916000035/sci-12312015x10k.htm.[4] The record lacks evidence on the crucial question of the level of control that SCI exercises over SCI Cal's day-to-day operations – particularly when it comes to the allegedly deceptive marketing and sales practices central to the allegations in this case. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (noting that jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary"); *see also Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 652-53 (9th Cir. 2010) (reversing denial of jurisdictional discovery, noting that "the court below erred by ruling on an incomplete record").

---

[4] *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir.2006) (SEC filings subject to judicial notice).

15

Although these types of statements fall far short of showing that SCI exercises control over its subsidiaries, they do at least raise a viable question about SCI's involvement in the relevant issues of marketing and branding at SCI Cal and the Lisle Funeral Home. *See Salas v. Facultatieve Techs. the Americas, Inc.*, No. 1:17-CV-00335-LJO-BAM, 2017 WL 4844366, at *7 (E.D. Cal. Oct. 26, 2017) (granting jurisdictional discovery where the court concluded that additional discovery "could yield additional facts about the relationship between [defendant] and the product at issue in this case"). The Complaint alleges that SCI sets nationwide marketing and branding standards for funeral homes under its control. At this stage in the litigation, the Court accepts that allegation as true. Therefore, the Court believes that some very limited jurisdictional discovery is appropriate in this case.

Because there is only minimal evidence in this case to support jurisdictional discovery, the Court finds it appropriate to allow only very limited discovery. The subject matter of the discovery is limited to SCI's dealings with SCI Cal as it relates to the allegedly deceptive marketing practices implicated in allegations in the Complaint. Jurisdictional discovery is also limited to the issue of personal jurisdiction based on the theory of an alter ego relationship, or specific personal jurisdiction based on an agency theory. With respect to the agency theory, Plaintiff should bear in mind that the scope of the agency theory has been significantly curtailed by recent Supreme Court and Ninth Circuit case law; Plaintiff must demonstrate at a minimum that the parent actually controlled the activity of the subsidiary as it relates to the alleged deceptive practices in this case to demonstrate jurisdiction.

# V. **CONCLUSION AND ORDER**

For the foregoing reasons, SCI's motion to dismiss is DENIED WITHOUT PREJUDICE, subject to limited jurisdictional discovery.

Discovery shall be limited to:

**1.** Ten document requests;

**2.** Twenty interrogatories; and

**3.** One Rule 30(b)(6) deposition not to last longer than 4 hours.

Jurisdictional discovery shall be completed within 60 days of the entry of this order. Plaintiff will then have 20 days after the close of jurisdictional discovery to supplement its opposition. Within 14 days of the filing of the supplemental opposition, Defendant may file a supplemental reply. The Court refers the parties to Magistrate Judge Grosjean for purposes of any discovery disputes, disputes this Court does not expect to occur.

IT IS SO ORDERED.

Dated: **May 17, 2018**          **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE